The PEOPLE of the State of Colorado, Complainant,

v.

Thomas M. SULLIVAN, Attorney–Respondent.

No. 89SA161.

Supreme Court of Colorado, En Banc.

Dec. 24, 1990.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Paul D. Renner, Denver, for attorney-respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

This is an attorney discipline case. The hearing board found that the respondent charged and collected a clearly excessive fee. The board also determined that the respondent neglected a legal matter entrusted to him but that mental illness caused the misconduct. The hearing panel of the Supreme Court Grievance Committee recommended that the respondent be suspended from the practice of law for six months, that he be required to file a petition for reinstatement and undergo reinstatement proceedings, that he demonstrate that depression does not impair his ability to perform his duties as a lawyer, that he pay restitution to the beneficiaries of an estate, and that the costs of the proceedings be assessed against him. Given the gravity of the charges and taking mitigating circumstances into account, we conclude that suspension for six months, together with the recommended conditions for reinstatement, is warranted.

I

The respondent was admitted to the bar of this court on March 20, 1950, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b).

The respondent was appointed the personal representative of the estate of Alice Rounds on February 16, 1979. The value of the estate was in excess of $1,000,000 and within the first two years after the estate was opened, the respondent distributed approximately 90–95% of its assets to the beneficiaries. The principal assets consisted of real estate, stocks and bonds,

about twenty producing oil and gas properties, cash, and a limited partnership interest.

Difficulties with estate tax returns and income tax returns, valuation of mineral interests, title questions, and ancillary proceedings required in Kansas and Nebraska delayed the closing of the estate. The 1979 income tax return was not filed until January 1982 and the delay cost the estate approximately $2,000 in interest and penalties. In addition, the respondent failed to promptly arrange for ancillary proceedings relating to oil and gas interests in Kansas and Nebraska. This failure resulted in the placing of revenues for one Nebraska lease in a suspense account, causing the loss of three years of interest on the funds.

The deputy disciplinary counsel and the respondent stipulated that, while the respondent was handling the estate, he: (1) delayed the closing of the estate; (2) overpaid himself; (3) failed to promptly arrange for ancillary proceedings for real estate interests in states other than Colorado; (4) failed to place funds into interest-bearing accounts; (5) failed to terminate operation of a company owned by the estate as to working interests in certain mineral leases; (6) paid himself for services the estate did not require as a probate function; (7) failed to request ancillary proceedings for a mineral lease in Nebraska resulting in a three-year loss of interest on the funds; and (8) failed to timely file tax returns resulting in penalties and fees to the estate.

The respondent admitted that his conduct caused damage to the estate in the amount of at least $13,000. In addition, the parties stipulated that, unless the respondent could establish by clear and convincing evidence that mental illness caused the misconduct, the respondent's acts constituted violations of DR6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him); DR2–106(A) (a lawyer shall not charge or collect a clearly excessive fee); DR1–102(A)(1) (a lawyer shall not violate a disciplinary rule); and C.R.C.P. 241.6(1) (violation of the Code of Professional Responsibility shall constitute grounds for discipline).

The hearing board accepted the stipulation but also received the testimony of the respondent in a hearing on January 12, 1989. The respondent admitted that he should have closed the estate by 1985, that he was replaced as the personal representative in early 1987 at the request of the beneficiaries, and the estate was apparently closed later in 1987.

The respondent's testimony also disclosed that he was questioned by the beneficiaries in 1986 about his fees. The respondent told them that he had paid himself more than $76,000 from the estate, although only $47,000 showed as deductions on the estate income tax returns. The respondent offered to refund the difference to the estate, but the beneficiaries refused. The respondent had not previously notified the beneficiaries regarding the attorney fees he was paying himself.

At the hearing on January 12, the respondent's attorney represented to the hearing board that the probate court entered a judgment against the respondent and that a portion of the judgment was for fees that the probate court found the respondent overpaid himself. The respondent then filed for bankruptcy, and the probate court judgment was filed as a claim. The respondent's attorney further represented to the board that it was anticipated that liquidation of the respondent's assets would result in payment of the probate court judgment.

Because the respondent had asserted mental illness as a defense to his misconduct, see C.R.C.P. 241.19(a), 7A C.R.S. (1989 Supp.), the proceedings before the board were bifurcated. A second hearing relating to the respondent's mental illness was held on April 19, 1989. At the second hearing, the respondent's wife, his treating cardiologist, and a psychiatrist testified. Significantly, the psychiatrist stated that it was highly probable that the respondent's misconduct was caused by major depression suffered by the respondent during the period of time he was handling the estate. When questioned by the members of the board, however, this witness could not

state that the depression caused the overcharging of attorney fees.

The hearing board concluded that the respondent violated DR6–101(A)(3) by neglecting a legal matter entrusted to him, but had demonstrated by clear and convincing evidence that the misconduct relating to neglect was caused by mental illness, and could not be the basis for discipline. Since the respondent had not shown by clear and convincing evidence that the mental illness caused him to overpay himself or perform unnecessary services, the board also found that the respondent violated DR2–106(A), DR1–102(A)(1), and C.R.C.P. 241.6(1). We agree that the respondent's conduct violated DR6–101(A)(3), DR2–106(A), DR1–102(A)(1), and C.R.C.P. 241.6(1).

## II

 The mental illness defense asserted by the respondent was contained in the last paragraph of former C.R.C.P. 241.19(a),[1] which provided:

> If a lawyer's mental illness, not including addiction to drugs or intoxicants, is established by clear and convincing evidence as the cause of the misconduct, the misconduct shall not constitute grounds for discipline, but the Supreme Court shall not be precluded from ordering a refund or restitution or from entering any other appropriate order.

We are unwilling to say, as urged by the deputy disciplinary counsel, that major depression can never constitute a "mental illness" for purposes of former C.R.C.P. 241.19(a). The hearing board heard expert testimony on the severity and effects of the respondent's depression. The factual findings of the hearing board are binding on us unless, after consideration of the record as a whole, we conclude that the findings are clearly erroneous and unsupported by substantial evidence. *People v. Bergmann,* 790 P.2d 840, 842 (Colo.1990). The board specifically found that there was no evidence that alcohol abuse contributed to any of the misconduct admitted in this proceeding. The record supports the board's conclusion that the respondent's neglect of legal matters was caused by depression, but that the overcharging of fees was not.

 The respondent contends that former C.R.C.P. 241.19(a) is unconstitutional because: (1) the quantum of proof it requires is clear and convincing evidence, contrary to section 13–25–127(1), 6A C.R.S. (1987);[2] and (2) imposing restitution on the respondent as a condition for reinstatement violates procedural due process.

Attorney discipline proceedings are *sui generis, People v. Morley,* 725 P.2d 510, 514 (Colo.1986), and are strictly neither civil actions nor criminal proceedings. C.R.C.P. 241.14(d) provides that "[h]earings shall be conducted in conformity with the Colorado Rules of Civil Procedure, the Colorado Rules of Evidence, and the practice in this state in the trial of civil cases; *provided, however, that proof shall be by clear and convincing evidence . . . .*" (Emphasis added.) This rule does not con-

---

1. The last paragraph of C.R.C.P. 241.19(a), relating to the mental illness defense, was added to the rule when it was amended on May 21, 1987, effective October 1, 1987. The present disciplinary proceedings were commenced on May 5, 1987, by the filing of the formal complaint, and the hearings before the board were held in January and April, 1989. The board concluded that the respondent was entitled to the benefit of the defense. *Cf. Glazier v. People,* 193 Colo. 268, 269, 565 P.2d 935, 936 (1977) (criminal defendant is entitled to benefit of amendatory legislation when relief is sought prior to conviction becoming final).

The deputy disciplinary counsel argued before the board that the mental illness defense was not available to the respondent, but does not press that argument here. We will therefore assume, without deciding, that the respondent was entitled to raise the mental illness defense.

On January 25, 1990, effective July 1, 1990, the last paragraph of C.R.C.P. 241.19(a) was stricken.

2. Section 13–25–127(1), 6A C.R.S. (1987), provides:

> **13–25–127. Civil actions—degree of proof required.** (1) Any provision of the law to the contrary notwithstanding and except as provided in subsections (2) and (3) of this section, the burden of proof in any civil action shall be by a preponderance of the evidence. The provisions of this subsection (1) shall not apply to the burden of proof required in determining the validity of any legislative enactment.

vert attorney disciplinary proceedings into civil actions for purposes of section 13–25–127. The respondent has not argued that the mental illness defense is constitutionally mandated, and may not be abolished by this court, or that placing the burden of proof on the respondent is unconstitutional. We reject the respondent's claim that former C.R.C.P. 241.19(a) is unconstitutional because of the quantum of proof it required.

■ Nor does the rule offend due process because it permits this court to order restitution. We note that the rule itself says nothing about the procedural due process accorded the respondent when restitution is ordered. The respondent argues that he was denied due process because he was not given notice of the "charge" of restitution and not given an opportunity to be heard on that issue. Restitution is not a "charge" made against the respondent, but is a remedy that this court may order if appropriate. The respondent stipulated that his misconduct caused damage to the estate in an amount of at least $13,000. The respondent has been given the opportunity to present arguments to both the hearing panel and this court why restitution should not be imposed. Under these circumstances, due process requires no more.

### III

■ The respondent also contends that the hearing board members should have recused themselves because the complaint filed by the disciplinary counsel contained factual allegations relating to the probate court proceedings that the disciplinary counsel did not intend to prove and could not prove under the rules of evidence. Since the members of the hearing board had been exposed to the allegations, the respondent claims that they should have recused themselves because of the appearance of impropriety.

We reject the argument that there was even an appearance of impropriety here merely because the members of the board were allegedly exposed to inadmissible evidence. We also note that the respondent's attorney made representations to the board regarding the probate court proceedings at the January 12 hearing similar to the allegations contained in the complaint filed by the disciplinary counsel. It was not error for the board to refuse the respondent's request for recusal.

### IV

■ Having found that the respondent's conduct violated DR6–101(A)(3), DR2–106(A), DR1–102(A)(1), and C.R.C.P. 241.-6(1), we turn now to the appropriate discipline to be imposed. We have determined that the violation of DR6–101(A)(3) may not be considered for the purpose of discipline, although it may be used in formulating an order for a refund, restitution, or other appropriate relief.

■ When the personal representative of an estate charges and collects excessive attorney fees, and fails to notify the beneficiaries of the charges over a period of years, it is very serious misconduct. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), in the absence of aggravating or mitigating factors, suspension is an appropriate sanction "when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *ABA Standards* 4.12.

As aggravating circumstances, we find: (1) a pattern of misconduct, *ABA Standards* 9.22(c); (2) that the victim was vulnerable, *ABA Standards* 9.22(h); and (3) that the respondent has substantial experience in the practice of law, *ABA Standards* 9.22(i). The disciplinary counsel has excepted to the recommendation of the hearing panel of a six-month suspension as too lenient, and argues that suspension should be for a year and a day. In the absence of any mitigating circumstances, we would agree that suspension for six months is too lenient.

In mitigation, however, we find: (1) that the respondent has been practicing for forty years and has no prior disciplinary record, *ABA Standards* 9.32(a); (2) the

presence of personal and emotional problems, *ABA Standards* 9.32(c); (3) mental disability or impairment, *ABA Standards* 9.32(h); and (4) the imposition of another penalty or sanction in the form of the probate court judgment, *ABA Standards* 9.32(k). In light of these mitigating factors, suspension for six months, together with the conditions that the respondent file a petition for reinstatement pursuant to C.R.C.P. 241.22(c), that he undergo the reinstatement proceedings described in C.R.C.P. 241.22(d), and that he demonstrate prior to reinstatement that his depression does not impair his ability to fulfill his responsibilities as a lawyer, is an appropriate sanction. *See People v. Mayer,* 744 P.2d 509, 511 (Colo.1987) (attorney suspended for six months would be required to petition for reinstatement and demonstrate his mental and emotional fitness to practice law where his conduct demonstrated a pattern of neglect and his mental condition contributed to the neglect of his professional responsibilities).

 We also conclude that an order of restitution is warranted even though the probate court judgment was a claim in the bankruptcy proceedings. *See Hippard v. State Bar of California,* 49 Cal.3d 1084, 1092–94, 782 P.2d 1140, 1145, 264 Cal.Rptr. 684, 689–90 (1989) (requirement of restitution as a condition for reinstatement of attorney was appropriate despite discharge of the underlying debt in bankruptcy, and did not violate federal bankruptcy law). Although the order to pay restitution here is for the benefit of private parties, rather than a state client security fund as in *Hippard,* the primary reason we are imposing the restitution requirement is for the respondent to demonstrate his rehabilitation prior to reinstatement.

The disciplinary counsel contends that the hearing panel should have ordered that the respondent satisfy the entire probate court judgment before reinstatement. However, the amended complaint filed by the disciplinary counsel deleted all reference to the judgment of the probate court, and the best description of the judgment and the bankruptcy proceedings in the record came from the respondent's counsel's representations to the hearing board. The parties stipulated that the estate was damaged by the respondent's misconduct in an amount of at least $13,000. The disciplinary counsel did not introduce evidence of the probate court judgment itself, or that the estate was damaged in an amount greater than $13,000. Under these circumstances, the recommendation of the hearing panel that the respondent pay restitution of the $13,000 admitted damages to the estate, plus interest, less any amount paid on the probate court judgment, is appropriate.

## V

It is hereby ordered that Thomas M. Sullivan be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. C.R.C.P. 241.-21(a). It is further ordered that Sullivan be required to file a petition for reinstatement and be required to undergo reinstatement proceedings as set forth in C.R.C.P. 241.22(c) & (d), and that he be required to demonstrate prior to reinstatement that depression does not impair his ability to fulfill his responsibilities as a lawyer. It is further ordered that Sullivan be required, as a condition for reinstatement, to pay restitution to the beneficiaries of the estate of Alice Rounds in the amount of $13,000, plus interest at the rate of 8% per annum, compounded annually, from March 5, 1986, until paid; provided that such amount shall be reduced by the amount restored to the beneficiaries by virtue of the litigation of Sullivan's assets in bankruptcy. Finally, it is ordered that Sullivan pay the costs of this proceeding in the amount of $5,535.42 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.

VOLLACK, J., dissents and ERICKSON and QUINN, JJ., join in the dissent.

Justice VOLLACK dissenting:

I respectfully dissent from the majority's decision to suspend the respondent for a

period of six months from the practice of law. In my opinion a longer period of suspension is warranted by the respondent's professional experience, the knowing and intentional character of respondent's conduct, and the financial benefit the respondent enjoyed as a result of his unethical conduct.

This disciplinary proceeding was filed as a result of the respondent's professional conduct as personal representative of the estate of Alice Rounds.

The respondent stipulated in the disciplinary proceedings that while handling the estate he:

(1) delayed the closing of the estate;

(2) overpaid himself;

(3) failed to properly arrange for ancillary proceedings;

(4) failed to place funds into interest-bearing accounts;

(5) failed to timely file tax returns resulting in injury to the estate; and

(6) paid himself for services the estate did not require as a probate function.

The respondent further admitted that his conduct caused damage to the estate in the amount of at least $13,000.

The respondent asserted mental illness (depression) as a defense to his misconduct. The hearing board held a separate hearing on the respondent's mental illness. After the evidentiary hearing, the board found that the respondent violated DR 6–101(A)(3) by neglecting a legal matter entrusted to him, but that the respondent had established by clear and convincing evidence that the neglect was a result of his depression. The board further found that the depression did not cause him to overpay himself or perform unnecessary services, and that the respondent's conduct was in violation of DR 2–106(A)[1] and DR 1–102(A)(1).[2]

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) [hereinafter *ABA Standards*] pro-

vides in Standard 7.2 that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system" (respondent engaged in pattern of charging excessive or improper fees, conduct covered by this standard).

In arriving at appropriate discipline it is necessary to consider the unethical conduct and any aggravating or mitigating factors. The respondent's conduct, in overpaying himself and paying himself for unnecessary services, is a serious abuse of a position of trust as an attorney and as a personal representative, causing significant injury to the client over a period of eight years. Respondent, after disclosure of his misconduct, has to date avoided making restitution by seeking protection of the bankruptcy laws. I would find aggravating circumstances in addition to those found by the majority (maj. at 1095)—that the respondent had a selfish motive, *ABA Standards* 9.22(b), and an indifference to making restitution, *ABA Standards* 9.22(j).

I disagree with the weight placed by the majority on respondent's mental disabilities as mitigation since the hearing board found the respondent's mental illness was a defense to respondent's neglectful conduct and not to his misconduct in charging excessive fees. The action of the respondent in seeking to avoid payment of the probate court judgment by filing for bankruptcy does not, in my opinion, constitute mitigation under *ABA Standards* 9.32(k) (imposition of other penalties or sanctions) (maj. at 1095–96), but rather, aggravation. The respondent's conduct is a serious violation of his duty to the profession and the public. I cannot agree that six months' suspension is appropriate in this case. Such discipline would unduly depreciate the seriousness of the respondent's misconduct and subse-

---

1. DR 2–106 Fees for Legal Services.

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

2. DR 1–102 Misconduct.

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.

quent action in the eyes of both the public and the legal profession.

I am authorized to say that Justice ER-ICKSON and Justice QUINN join in this dissent.